

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL TRIEVEL** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | **NO. 18 1374** |
| **v.** | : | |
| | : | |
| **THE LINCOLN NATIONAL** | : | |
| **LIFE INSURANCCOMPANY** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

### CIVIL ACTION COMPLAINT

Plaintiff, Michael Trievel, by and through his attorney, MARY LEMIEUX-FILLERY, as

and for his Complaint against Defendant the LINCOLN NATIONAL LIFE INSURANCE

COMPANY hereby sets forth the following:

### PARTIES

1.      Plaintiff, Michael Trievel (hereinafter "Plaintiff") was and still is a citizen and

resident of the state of Pennsylvania residing at 4251 Hunters Run Boulevard, Reading, PA

19606.

2.      Defendant, the Lincoln National Life Insurance Company (hereinafter

"Defendant") is incorporated in the State of Nebraska and has its principal place of business at

8801 Indian Hills Drive, Omaha, Nebraska 68114.

### JURISDICTION

3.      Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f),

which give the District Courts jurisdiction to hear civil actions brought to recover benefits due

under the terms of an employee welfare benefit plan. Jurisdiction is also founded on 28 U.S.C. §

1331 because this action arises under 29 U.S.C. § 1001 et. seq. (Employee Retirement Income Security Act of 1974, hereinafter "ERISA").

4.       Venue in the Eastern District of Pennsylvania is appropriate because Defendant conducts business and is subject to personal jurisdiction in the judicial district and maintains contacts in the jurisdictional district sufficient to subject it to personal jurisdiction.

5.       Pursuant to 28 U.S.C. § 1391(a)(1) and § 1391(c), this action is properly venued in the Eastern District of Pennsylvania.

## FACTS

6.       Plaintiff is a 58-year-old male with a date of birth of March 5, 1959.

7.       Plaintiff was employed by the Reading Health System as Respiratory Therapist prior to filing for LTD insurance benefits. This was a medium exertional level occupation with a SVP 8, indicating a highly skilled position.

8.       Plaintiff stopped working on August 15, 2014, due to symptoms and resulting impairment stemming from a stroke which included left sided weakness, cognitive impairment as well as symptoms relating to lumbar degenerative disc disease and bilateral degenerative joint disease in the knees.

9.       Plaintiff has objective evidence including diagnostic and clinical evidence that corroborates his inability to perform full-time work.

10.      Plaintiff became eligible for LTD insurance benefits and Death Benefits on November 15, 2014.

11.      During Plaintiff's employment with Defendant, Defendant issued a long-term group disability income policy and Death Benefits Policy (hereinafter the "the Policies").

12.     During his employment with the Reading Health System Plaintiff was a participant and/or beneficiary under Defendant's Policies.

13.     Defendant approved Plaintiff's claims under the Policies and paid LTD benefits from November 15, 2014, through September 9, 2016, and waived the premium for death benefits through September 7, 2016.

14.     On September 9, 2016, Defendant denied Plaintiff's claim for continuation of LTD benefits past November 15, 2016.

15.     On September 7, 2016, Defendant denied Plaintiff's extension of death benefits beyond September 7, 2016.

16.     Defendant based their denials upon its contention that Plaintiff no longer met the LTD policy definition of disability as he retained the capacity to perform other occupations.

17.     Plaintiff was approved for Social Security Disability ("SSD") benefits on January 25, 2017.

18.     Social Security's Vocational Expert testified at the SSD hearing that Plaintiff had no transferable skills to from his past occupation as a Respiratory Therapist to light or sedentary jobs.

19.     Plaintiff's treating neurologist Dr. Hoerst has submitted evidence to the record that Plaintiff's limitations and restrictions include: cognitive deficits-specifically that he cannot make judgments and decisions, he cannot deal with people frequently, he cannot attain precise set limits, tolerances and standards, he cannot perform a variety of duties, that he has been limited to at best unskilled work.

20.     Dr. Hoerst has additionally opined that even a semi-skilled job would exacerbate the severity of Plaintiff's cognitive impairments and anxiety.

3

21.     Dr. Hoerst is also of the opinion that Plaintiff would require unscheduled breaks and that he has reached maximum medical improvement.

22.     Dr. Bundy treats Plaintiff for pain management and opined in a November 7, 2016, medical source statement that Plaintiff is limited to standing/walking for two hours in an 8 hour work day and is limited to rarely lifting/carrying 20 pounds at maximum and only occasionally lifting/carrying less than ten pounds.

23.     Defendant's reviewing doctor Dr. Kalnin, board certified in psychiatry, opined that Plaintiff was capable of completing an on-line Masters degree, drive and assist in paying bills. Dr. Kalnin opined that psychiatric impairment is not noted due to no record of cognitive testing supporting impairment.

24.     Defendant's reviewing doctor Dr. Hoenig, board certified in neurology and pain medicine noted that from a neurological perspective, Plaintiff has reached maximum medical improvement. Dr. Hoenig noted that there was no documentation that Plaintiff still had neurological deficits from the stroke. And, there was no documentation of a neuropsychologic evaluation demonstrating objective findings that the Plaintiff is unable to complete multistep cognitive tasks and no neurological diagnosis resulting in functional impairment.

25.     Cognitive testing from December of 2016, a NeuroTrax report, provides objective evidence that confirms significant cognitive deficits in multiple domains, most significantly in memory and attention consistent with patients known post stroke cognitive delay.

26.     Plaintiff clarified in November 2, 2017, statement that was provided to Defendant, that he was encouraged to attend the Masters degree program by Dr. Hoerst as she thought it would be beneficial treatment. Plaintiff also clarified that he only had three remaining classes to complete to obtain his degree and that accommodations were provided to him by the school.

4

27.     Defendant's reviewing doctor Dr. Laikin, board certified psychiatrist, opined that he was unsure if Plaintiff could work a full-time schedule or would only be capable of more limited productive periods of focus and concentration. Dr. Laikin opined that Plaintiff's permeant cognitive losses due to the stroke leave him with a reduced work capacity.

28.     Dr. Laikin provided limitations and restrictions that Plaintiff cannot return to a high stress, fast paced job where he would be under time pressure and that his full work capacity can only be assessed after he returns to work.

29.     Dr. Laikin noted that Plaintiff works as a volunteer fireman.

30.     Plaintiff clarified in an August 31, 2017, statement which was provided to Defendant that he was forced to end his firefighting career on August 17, 2014, the day he suffered the stroke.

31.     Defendant had a nurse, Nurse Mullet review Plaintiff's second appeal.

32.     The results of the FCE and interrogatory responses from Dr. Hoerst support Plaintiff's consistent, subjective complaints regarding his pain and limitations over the course of this claim. The interrogatory responses from Dr. Hoerst were not noted as reviewed by Nurse Mullett.

33.     Plaintiff's current medication regimen includes Sertraline, Diltiazem, Invokana, Xarelto, Hydrocholorothiazide, Olopatadine, Atorvastatin, Montelukast. Plainitff reported that he personally has experienced headaches, chronic and debilitating fatigue, upset stomach, trouble sleeping and drowsiness as side effects of his current medication regimen. As a result, he finds it very difficult to make it through a day without needing to rest.

34.     These side effects inhibit Plaintiff's ability to perform any skilled work prohibiting his ability to solve problems, make conclusions, maintain attentiveness, and comply

5

with precise instructions. In combination with his cognitive deficits, these side effects significantly limit Plaintiff's ability to maintain the necessary cognitive functioning required to complete any skilled position.

35.     The side effects of Mr. Trievel's medications were not evaluated by Nurse Mullett.

36.     The Social Security Disability Fully Favorable decision March 30, 2017, email narrative from Mr. Trievel November 2, 2017, Interrogatory responses from Dr. Hoerst dated November 1, 2017, and email narrative Mr. Trievel December 20, 2017, was submitted to Defendant along with Plaintiff's second level appeal review, yet none of it was referenced or stated as reviewed by Nurse Mullett.

37.     The above referenced information was not reviewed by Defendant in issuing its conclusion that there was no evidence of significant findings to change its prior determination.

38.      Per the LTD policy "Disability" means: that you are prevented by disease or injury from performing the main duties of your own occupation

39.     After 24 months of payment, you must be "so prevented from performing *all of the main duties of any occupation which his training, education, experience or physical or mental capacity will allow.*"

40.     Defendant's LTD Policy is an employee welfare benefit plan specifically covered under ERISA, 29 U.S.C. § 1002(2)(A).

41.     Defendant made and/or participated in making all benefits decisions under the Polices.

42.     Said LTD Policy was issued for the benefit of certain eligible employees in exchange for the payment of premiums by Defendant and/or its employees.

6

43.     Said LTD Policy provided, among other things, that LTD disability insurance benefit payments will be made to Plaintiff as long as he continued to meet the definition of disability as contained in the LTD policy.

44.     The maximum duration of the Defendant's LTD policy was until Plaintiff reached Social Security Normal Retirement Age.

45.     Plaintiff's LTD monthly benefit is $3,658.00.

46.     Plaintiff cooperated with the Defendant in all respects, provided proper proof of loss in support of his LTD claim, and otherwise complied with the Policies' terms and conditions regarding the filing and maintenance of the claim.

47.     Pursuant to the LTD Policy, Defendant was obligated to continue the periodic payment of monthly LTD and benefits to Plaintiff past November 15, 2016, and the waiver of premiums for death benefits past September 7, 2016.

48.     Despite Plaintiff's continued total disability, Defendant has denied all LTD insurance benefit payments to Plaintiff and continues to refuse to pay benefits pursuant to the Policies, although payment thereof has been duly demanded.

49.     Said refusal on the part of the Defendant is a willful and wrongful breach of the LTD Policy's and death benefits terms and conditions.

50.     Plaintiff's treating physicians consistently opined through treatment notes, Defendant's disability claim forms, Plaintiff's residual functional capacity forms, interrogatories, and the FCE, that Plaintiff has been unable to work beyond November15, 2016, due to his disabling conditions.

51.     Plaintiff's treating physicians' opinions are consistent with the evidence of record.

7

52.     Defendant based their denial on their independent file reviewing doctors' opinions concerning Plaintiff's ability to perform other occupations.

53.     Defendant's file reviewing doctor's opinions is in clear contradiction to Plaintiff's treating physicians, opinions and the evidence of record.

54.     Defendant afforded little weight to the opinions of Plaintiff's treating physicians in denying his claim for LTD benefits.

55.     Defendant's denial of Plaintiff's Policies' benefits is unreasonable and unsupported by substantial evidence and as such constitutes a breach of fiduciary duty.

56.     Defendant's unreasonable and unsupported denial of Plaintiff's Policies' benefits is evidenced, inter alia, by the number of procedural irregularities in its claim handling, including but not limited to: the refusal to consider Plaintiff's credible subjective complaints about his inability to work; the reliance upon a selective review of medical records to reach a result oriented claim determination; the failure to utilize appropriately qualified and unbiased medical personnel to reach decisions and/or render opinions on levels of impairment; the biased and flawed vocational consideration on Plaintiff's claim; the failure to perform a fair and neutral evaluation of Plaintiff's medical condition and associated restrictions and limitations; and other biased claim handling.

57.     Defendant's claim handling resulted in numerous violations of 29 C.F.R. § 2560.503-1 et. seq.

58.     Defendant's claim handling failed to provide Plaintiff with a full and fair review of his claim.

8

59.     Defendant's claim handling demonstrates a bias against Plaintiff's claim due to its impact on Defendant's financial situation and frustrated Plaintiff from receiving a full and fair review of his claim.

60.     Plaintiff has attempted to exhaust all administrative appeals and remedies to the extent they exist pursuant to the conditions of the employee benefit plan.

61.     By reason of the foregoing claims conduct, Defendant failed, by operation of law, to establish and follow reasonable claims procedures that would yield a decision on the merits of her claim. 29 C.F.R. § 2560.503(1).

62.     Because Defendant failed to satisfy the minimal procedural safeguards set forth in 29 C.F.R. § 2560.503(1), Defendant's adverse benefit determination is not entitled to any judicial deference.

63.     Defendant willfully failed to comply with ERISA regulations.

64.     Monthly disability insurance benefit payments to Plaintiff are continuing to be due and payable by Defendant with the passage of each month.

65.     Plaintiff is entitled to receive the total past due benefits under the LTD plan and the future LTD benefits due under the plan discounted to present value as well as the continuation of his waiver of premium for death benefits due to Defendant's arbitrary and capricious decision to deny Plaintiff's benefits.

66.     Plaintiff is entitled to receive, in addition to the benefits due under the plan of insurance, interest, reimbursement for reasonable attorney's fees and costs of this action pursuant to 29 U.S.C. 1132(g).

**WHEREFORE,** Plaintiff Michael Trievel demands judgment in his favor and against Defendant together for:

9

A.      Payment of all benefits in arrears due and owing since the denial of LTD benefits, plus interest;

B.      The total benefits due under the LTD plan discounted to present value;

C.      The continued waiver of death premium benefits or reimbursement therefore,

D.      Attorney's fees and costs of suit;

E.      Interest, delay damages; and,

F.      Any other further relief this Court deems just proper and equitable.

By _____
Mary LeMieux-Fillery, Esq.
Attorney I.D. No. 312785
MARTIN LAW
1818 Market Street, 35th Floor
Philadelphia, PA 19103
(215) 587-8400
Attorney for Plaintiff

Date: March 29, 2017

10